CHESTER C. CONANT, judge of probate, *vs.* HORACE H. STRATTON & others.

After judgment for the plaintiff in an action brought by a legatee in the name of the judge of probate on a bond given by the executor under the Gen. Sts. c. 93, § 3, it is too late for the defendant to object that the action could not be maintained for want of a previous demand on him for the legacy.

Under a bequest to the testator's widow of "ten dollars per year for spending money, if she should need it and call for it, to be paid to her by the executor," her call for the money is conclusive of her need of it, and by omitting to call during any one year she does not forfeit the right to take payment for that year afterwards.

A bequest to the testator's widow of "a good and comfortable support and maintenance, both as to food, clothing and nursing in health and sickness at his house," includes a proper supply of fuel, and the necessary expenses of keeping the house in tenantable and comfortable condition.

The fact that a testator's widow owns a small amount of property in her own right is immaterial in determining what is due under his bequest to her of "a good and comfortable support and maintenance, both as to food, clothing and nursing in health and sickness at his house."

In assessing damages for the breach of an executor's obligation to provide "a good and comfortable support and maintenance" for a legatee "as to clothing," the allowance of clothing due to the legatee may be computed at an annual sum.

In assessing damages for the plaintiff in an action brought in the name of the judge of probate by a testator's widow for a breach of a bond given by the executor under the Gen. Sts. *c.* 93, § 3, consisting in his refusal to fulfil a legacy of a comfortable support and maintenance to her at the testator's house, a sum may be included for her discomfort and inconvenience through the defendant's neglect to keep the house in repair, and also whatever amount is needful to make it habitable and comfortable.

Upon a judgment for the plaintiff in an action brought in the name of the judge of probate on a bond given by an executor under the Gen. Sts. *c.* 93, § 3, for the executor's neglect to pay a legacy, damages are to be assessed, and execution is to issue, for the amount due upon the legacy to the date of judgment, without reference to the amount of the estate in the executor's hands.

CONTRACT, brought March 29, 1870, upon a bond given May 2, 1867, by Horace H. Stratton, with the other defendants as sureties, under the Gen. Sts. *c.* 93, § 3, in the penal sum of $2000, conditioned that he, being executor and residuary legatee of his father, Samuel Stratton, late of Gill, deceased, should pay all the debts and legacies of the testator.

By the will, which was set forth in the declaration, the testator bequeathed to his wife, Sarah Stratton, the furniture which she brought to him at the time of their marriage, and " a good and comfortable support and maintenance, both as to food, clothing and nursing in health and sickness at my house in Gill, where I now live, and to be furnished to her by my executor hereinafter named, at his expense, during her natural life and so long as she remains my widow," and also " ten dollars per year for spending money, if she should need it and call for it, to be paid to her by my executor hereinafter named, so long as she remains my widow." He then made bequests and provisions for the benefit of his daughter Mehitable and others of his children, and among other things gave Mehitable $500 and " a right to have a home in my house, where I live, so long as she remains unmarried, and the right to use and occupy such parts of my house as she may find necessary and convenient, while she remains unmarried, and she and my said wife may occupy said house together or in such proportions as they may agree upon." And finally he appointed Horace H. Stratton executor; and gave him all the residue of the estate, " on condition that he pays the legacies hereinbefore named to my other children, and maintains and supports my present wife, as hereinbefore provided for her, and relinquishes all claims for his labor and services heretofore and hereafter for me, and also

relinquishes all claims against my estate for a certain note of hand which I have given him for the sum of about $800."

The alleged breach of the bond was, that Horace H. Stratton, " though requested, has not furnished the said Sarah Stratton a good and comfortable support and maintenance ; that he has neg- lected and refused to furnish said Sarah with suitable firewood, clothing, food and lights ; that he refuses to keep the house men- tioned in said will in reasonable repair and condition for the use and occupation of said Sarah, and refuses to permit her to occupy said house ; and that he also refuses to said Sarah the sum of ten dol- lars a year for spending money, though she has needed and called for the same." And the declaration alleged that " the said Sarah, being aggrieved by the neglect and default of said Horace H. Stratton, applied for and obtained leave to bring a suit upon the aforesaid bond, and so the plaintiff says that an action has ac- crued to him in his said capacity " of judge of probate, " to recover of said defendants any and all damages sustained by reason of the aforesaid neglect and default of said Horace H. Stratton, executor as aforesaid."

The answer denied that Horace H. Stratton had failed to fur- nish Sarah Stratton with a good and comfortable support and maintenance ; denied that he was under any obligation to supply her with firewood or lights, but alleged that he had nevertheless furnished wood enough for her use ; denied that he ever failed to furnish her with necessary food and clothing " so far as he could ; " denied that the house was in a condition unsuitable for her use and occupation, or that he ever refused to permit her to occupy it ; and denied that he had refused the spending money provided for her by the will, but alleged that, if he had, it was because she never called for it and did not need it, having a large estate of her own. Finally the answer alleged " that the estate of Samuel Stratton has been long since exhausted in the payment of debts and expenses of administration, and the provisions of his will in regard to the support of his wife Sarah cannot be fulfilled for any time hereafter, because there is no estate or property left for that purpose, and the defendants deny that they are under any obligation to furnish any further support for the said Sarah, she well knowing the premises."

The case was submitted to the determination of the court without a jury, under an agreement of the parties that if judgment should be given for the plaintiff an assessor should be appointed to ascertain the sum for which execution should issue ; and at April term 1871 *Colt*, J., gave judgment for the plaintiff and referred the case to an assessor, the following are the material parts of whose report :

" On the hearing, at the outset, the question arose upon what rule the damages were to be assessed. The plaintiff contended that the true rule was the amount of estate received by the defendant as executor and residuary legatee, less the legacies, debts and such other charges as were lawful claims under the will against the executor, so far as the executor should show that he had paid the same. The defendant contended that the execution should issue only for that actual damage which it might be proved that the widow, for whose benefit the action is brought, had suffered from the non-fulfilment of any of the provisions for her benefit in the will. I therefore heard all the evidence produced as proof of damage under both rules suggested, and report my finding in two forms :

" First. I find that the executor and residuary legatee received an estate of the value of $5979.88 ; and that out of this estate he has paid two sums, viz: legacy of Mehitable, $500 ; one half of a mortgage on part of the property owned in common with the executor, $250. Although the hearing was adjourned over one day to enable the executor to be prepared with his statement of account, no further evidence of payment by him was offered. I therefore find that out of the estate received by him there remains unaccounted for, in money value, the sum of $5220.88 ; and if this is the true rule of damage in this case, (which question is submitted to the court,) I find that execution should issue for that sum.

" Second. Assessing the damage or sum for which the execution should issue on the principle that the true measure is what the widow has sustained of actual damage from the non-fulfilment of his obligations by the executor, I find the items as follows :

" 1. Under the provision of the will as to spending money, I treat the provision as calling for an annual payment. Prior to the judgment in the case, three full years had elapsed; and I find that in the judgment of the widow she needed such spending money, and that demand was made by her on the executor for the allowance for three years, and I assess the amount due as spending money at $30.

" 2. I find the money equivalent for the provision for clothing to be $50 per annum ; and I assess the damages sustained by the widow from the non-performance of the executor in this particular (calculated to the time of judgment in this suit, at $50 per annum for three years and ten months, to be $191.66, less the amount furnished in that time, viz. $8.75) at $182.91.

" 3. I find that the executor has neglected to furnish any firewood to the widow for two and a half years up to the time of judgment in the action, and assess the damage at five cords a year at $8 per cord, or in gross $100.

" 4. I find that, from August 1869 to the time of the judgment in the action, the executor has failed to furnish any provisions to the widow for ninety-four weeks ; and I find $3.25 to be a reasonable sum per week to supply her with provisions at her house in Gill, to be cooked by herself; and therefore I assess her damage in this particular at $305.50.

" 5. I find that the house where, under the will, the widow was to live and receive her support, has been suffered by the executor to be in an almost ruinous state, without any repairs ; that it has not been comfortable at any time since a period shortly subsequent to the testator's decease ; and that during the latter part of the time only one room has been in a living or habitable condition. In assessing damage in this particular, I find as follows: For the discomfort and inconvenience suffered from leakage and other dilapidation, $100 ; and for the amount necessary to repair the house so as to put it in comfortable and habitable condition, $275.

" In assessing each and all the above items, I declined to consider the admitted fact, that the widow was possessed of a sole and separate property of $700 in money ; and I required no evi-

dence in regard to the first item, that it was at any time necessary, except in her own judgment, that she should have spending money, holding that the executor could not be the judge of a necessity in the case and was obliged to pay the money if called for by the widow. I was also requested by the defendants to rule that there was no default in regard to any of the provisions of the will, on the part of the executor, until demand by the widow. In view of the provisions of the will I declined so to hold, but I nevertheless find that there were parol demands made on the executor by the widow, both before and after written demands annexed to this report. I was also requested by the defendants to rule that no damages could be recovered after the date of the suit. I declined so to hold, and have assessed damages in the manner above stated to the date of the judgment. I was also requested by the defendants to rule that if the widow did not call for the spending money each year she would waive her right to it. This I declined to rule, but found the fact as above stated. I was also requested by the defendants to rule that the words "good and comfortable support" in the will do not include firewood, lights and repairs. This I declined to hold. By an understanding between the parties and the assessor, all rights of parties to object to the rule as to the measure of damages on any item of damage above recited are saved.

"If therefore the true rule for assessing the sum, for which execution should issue, is what actual damage the widow has sustained from the non-performance of his obligations by the executor, I assess said sum, according to the above items, at $993.41, to the date of the judgment."

The written demands annexed to the report were three letters addressed by the widow to the executor under dates respectively of July 1869, August 30, 1870, and January 15, 1871. In the first, she requested him to pay her twenty dollars "agreeably to the will." In the second, she requested him to pay her ten dollars agreeably to the will, and stated that she needed the money. In the third, she requested him to pay her ten dollars agreeably to the will, and gave him notice that she needed four or five cords of wood, cut and prepared for the stove, also twelve yards of cot-

ton cloth, and ten yards of black alpaca cloth for a dress, with thread and silk to make it.

The case was heard by the chief justice and reserved for the determination of the full court upon the questions reported by the assessor.

*A. Brainard,* for the defendants. The condition of the bond was, that the executor should pay the testator's debts and legacies. His obligation to do so being absolute, the amount of the estate which came to his hands affords no measure of his liability for a breach of it, and is immaterial in the computation of damages. *Jones* v. *Richardson,* 5 Met. 247. The second rule stated in the assessor's report is the true one, that execution should issue for such damages only as it is proved that the widow actually suffered by the executor's default.

The assessor's findings and rulings upon the items of the $993.41, which he has computed under this rule, are erroneous in many particulars.

1. As to the spending money. The allowance of it to the widow by the testator was conditioned on her "needs," not her "wishes." If she is to be the judge of her needs, the two words are confounded. And if she is not to be the judge of them, the executor must be, subject to the oversight of the probate court.

The allowance was a yearly one. Her right to call for it for any one year ceased with the year.

2. It was erroneous to assume that an annual provision of clothing was due to the widow. The executor's duty to provide depended on her need. If she was already largely provided with clothing when the testator died, she may not have needed any more than he has furnished her with. He was not bound to furnish her with clothing or anything else, till she demanded it and specified the articles she needed. *Prescott* v. *Parker,* 14 Mass. 428. *Miles* v. *Boyden,* 3 Pick. 213. *White* v. *Webster,* 13 Pick. 374.

3. In the provision " of a good and comfortable support and maintenance both as to food, clothing and nursing," the last part of the clause limits the first part, and excludes any obligation to furnish fuel. The testator did not intend to make provision for

her entire support. He knew that she had means of her own. *Dawes* v. *Swan,* 4 Mass. 208, 215. *Braman* v. *Stiles,* 2 Pick. 460, 463.

4. The defendants do not object to the finding as to the food, except on the ground that the allowance is excessive in amount.

5. As to the allowance for the widow's discomfort and inconvenience from the dilapidated condition of the testator's house, it is to be observed that the use and occupation of the house are not expressly or exclusively given by the will to the widow; that no provision is made in the will for repairs; and that it does not appear that the house is or ever has been worth repairing since the testator's death. These considerations apply also to the allowance for repairs; and the defendants further object, in respect to that item, that it is beyond the jurisdiction of the court to require the executor to pay a gross sum to another person in advance for repairs, without reserving to the executor any power to compel or supervise its application.

6. No damages can be recovered since the date of the writ.

*S. O. Lamb,* for the plaintiff. Under the Gen. Sts. *c.* 101, § 28, *cl.* 4, the plaintiff is entitled to execution for $6214.29, — $5220.88 as the value of the estate of the deceased in the executor's hands for which he does not account, and $993.41 for damages occasioned by his neglect and maladministration.

The assessor's findings and rulings upon the items which compose the $993.41 are all correct.

1. As to the spending money. By the terms of the bequest, that the widow should have it "if she should need it and call for it," no power of revision of her own judgment of her need is given to the executor. The expression of her wish for the money at any time is conclusive of her need of· it, in the sense of the word "need" in this connection.

2. As to clothing. The terms of the bequest impose the duty on the executor to furnish her with suitable clothing at his own expense; and the judgment in the action and the findings of the assessor are conclusive that he neglected and refused to do sc. It is immaterial that she had some means of her own, out of which she could make temporary provision for herself during his

default. The allowance made by the assessor is reasonable. Fifty dollars a year for dressing a modern woman is moderate enough.

3. As to firewood. Fuel was certainly necessary to cook the widow's food, and warm her dwelling; and without cooked victuals and a warm room she could not have "a good and comfortable support" as to either food or nursing.

4. The allowance for food is reasonable.

5. The provisions of the will concerning the use and occupation of the house, by the widow and the testator's daughter Mehitable, are plain to the effect that he meant that his widow should enjoy a home there substantially as she had enjoyed it in his lifetime. *Whiting* v. *Whiting*, 15 Gray, 503. And on this construction of them the executor was bound to keep the house habitable and comfortable at his own expense, and is liable for the damage occasioned by his neglect of duty.

To the objection that the executor should not be compelled to pay money for repairs, with no power reserved to him to compel or supervise its application, it is sufficient to reply that the sum is not to be paid to the widow, but to the judge of probate, to be applied according to law to carry into effect the provisions of the will.

6. Damages were properly assessed to the date of the judgment. *Waldo* v. *Fobes*, 1 Mass. 10.

AMES, J. The only question to be disposed of in this case is as to the amount for which execution ought to issue, upon the judgment which has been rendered in favor of the plaintiff. The suit is founded upon the executor's bond, given for the payment of the debts and legacies of the testator, in pursuance of the Gen. Sts. *c.* 93, § 3; and the breach of the bond charged against the executor is his neglect or refusal to pay the legacy given by the will to the testator's widow. The declaration alleges that she applied to the plaintiff for leave to bring this action in his name; that such leave was granted; and that the action is accordingly brought to recover damages "for the aforesaid neglect and default" of the executor. The defendants in their answer denied that there had been any breach of the condition of the bond

and insisted that the executor had fully administered the estate. Upon the trial of this issue, judgment was rendered for the plaintiff, and the case was committed to an assessor, to determine the amount for which execution should issue. The question now to be disposed of is raised by his report.

At this stage of the case, it is manifestly too late to call in question the right of the plaintiff to maintain this action. If under any circumstances an action upon the executor's bond for the payment of debts and legacies can be maintained in the name of the judge of probate for the benefit of a single legatee, we must assume either that the needful circumstances existed in this case, or that the want or absence of any of them was waived by the defendants. It is well settled that the giving of such a bond is an admission of sufficient assets, and the failure to pay a legacy on demand, when it is due, is a breach of the condition. *Jones* v. *Richardson*, 5 Met. 247. There being a breach of the bond, a suit in the name of the judge of probate will lie; and when such action can be maintained for the benefit of a legatee, the execution should issue for the amount of the legacy and interest. *Fay* v. *Taylor*, 2 Gray, 154. The bond is taken expressly for the security of a legatee, and upon proper demand suit upon the bond may be brought for his benefit. *Prescott* v. *Parker*, 14 Mass. 428. In *Paine* v. *Gill*, 13 Mass. 365, it was settled that after the judge of probate has obtained judgment on the bond for a breach of the condition the court might award execution to any one who should satisfactorily prove that he was entitled to an indemnity out of the condition of the bond. The statute provides that if the executor should commit a new breach of the condition of the bond, or if a creditor, next of kin, legatee or other person interested has a claim for further damages, on account of any neglect or maladministration of the executor, a writ of *scire facias* may issue on the original judgment, and a new execution may be awarded in like manner as might have been done in the original suit. Gen. Sts. *c.* 101, § 30. In *Fay* v. *Taylor* it does not appear to have been considered a necessary preliminary to such an action, that judgment should have been rendered in favor of the legatee, against the executor, for the amount of the legacy. In that

case the amount of the legacy was not a matter of controversy. Whether the executor in the present case could have successfully resisted the plaintiff's claim, on the ground that the legacy is not for a definite and specific sum, and that it should first have been made the subject of a suit against the executor and reduced to a judgment against him in favor of the legatee herself, is a question which does not arise upon these pleadings. It is too late for him, in the present position of the case, to resort to any such defence. We cannot doubt therefore that the execution may properly issue for the amount due to the widow, in this case, upon her legacy. *Richardson* v. *Oakman*, 15 Gray, 57. The auditor's construction of the bequest to her, and his award and rulings as to the actual damage which she has sustained from the non-fulfilment of his obligations by the executor, appear to us to be correct both in principle and detail. The bequest of a good and comfortable support and maintenance, as to food, clothing and nursing, in health and in sickness, at the testator's house, to be furnished by the executor at his expense, plainly includes a proper supply of fuel, and the necessary expense of keeping the house in a tenantable and comfortable condition. Upon his refusal to execute the trust imposed upon him by the terms of this bequest, he may rightfully be compelled to furnish her with the funds necessary to enable her to obtain and enjoy the bounty intended by the testator, and to indemnify her for all damages occasioned by such refusal.

The only serious doubt in the case arises from the provisions of the fourth clause of § 28, which seem to import that the execution to be issued under that section should be for the entire amount of all the estate remaining in the executor's hands. It appears to us, however, that these provisions do not apply to the present case, but are rather intended for the case of the removal of an unfaithful executor from his trust, and the substitution of another in his stead. *Bennett* v. *Russell*, 2 Allen, 537. The suit provided for in that clause is in the name of the judge of probate; but he is a formal and official party only. He can in no case receive the money, or the proceeds of the suit, himself, and has no authority to direct their appropriation or distribution. On the

contrary, they are to be paid to a rightful administrator, and would be assets in his hands to be administered according to law. *Newcomb* v. *Williams*, 9 Met. 525. It is manifest that such a suit would not directly result in a decree in favor of a legatee or creditor whose rights had been disregarded, and would not furnish a convenient or appropriate remedy for a wrong of that kind.

Our conclusion therefore is, that execution should issue upon the judgment for the amount due upon the legacy as found by the assessor, namely, $993.41, with interest and costs.

*Ordered accordingly.*